SULLIVAN REALTY AND IMPROVEMENT COMPANY, Appellant, v. DAVID W. CROCKETT et al., Respondents.

St. Louis Court of Appeals, June 30, 1911.

1. NUISANCES: Sewer Emptying Into Street. The maintenance of a private sewer from a building containing a hotel, five business- rooms and a laundry, which discharged sewage from all the water appliances in the building into a public street, causing a cesspool to form thereon, constituted a public nuisance, even though the sewer did not emit noisome smells, since the cesspool impeded and obstructed the free use of so much of the street as it occupied.

2. ————: "Nuisance Per Se:" Definition. A "nuisance *per se*," as the term implies, is a nuisance in itself, and one which cannot therefore be so conducted or maintained as to be lawfully carried on or permitted to exist.

3. ———: **Sewer Emptying Into Street: Power of City to Authorize: Municipal Corporations.** A city council has no power to license an individual to lay a private sewer in a public street and to discharge sewage therein.

4. ———: **Nuisance Per Se: Unlawful Use of Public Street.** A private use of a public street which is beyond the power of the city to license or authorize is a nuisance *per se*.

5. ———: ———: **Abatement.** A public nuisance existing on a public street may be summarily abated without ordinance or adjudication, by a private citizen or city officials, provided no unnecessary damage is entailed.

Appeal from St. Louis County Circuit Court.—*Hon. G. A. Wurdemann,* Judge.

AFFIRMED.

*R. H. Stevens, Jesse H. Schafer* and *John W. Booth* for appellant.

(1) The board of aldermen of the city of Sullivan had no power with reference to nuisances in the city and their abatement, except its legislative power, which it could only exercise by ordinance. R. S. 1899, secs. 5964 and 6164. Its power with reference to nuisances and their abatement was strictly a legislative power. State ex rel. v. Gates, 190 Mo. 540; Ruggles v. Collier, 43 Mo. 353; St. Louis v. Clemens, 43 Mo. 395; Neill v. Gates, 152 Mo. 585, 1. c. 594; St. Louis v. King, 226 Mo. 334. (2) The city of Sullivan has not, with reference to the alleged nuisance involved in this case, exercised either the legislative or the ministerial powers conferred upon the city by the laws of the State of Missouri. The ordinance read in evidence is simply an attempt to delegate its general power and authority (legislative and ministerial), to a board of health consisting of the mayor of the city, an alderman of the city, and a resident physician for the abatement of all nuisances existing at the passage of said ordinance, or thereafter to exist in said city. Said ordi-

nance is therefore illegal and void. (3) The proceedings in lieu of abating a nuisance constituted a destruction of private property without warrant of law, and said order and proceedings cannot avail as a defense in this case. Waggoner v. City of South Gorin 88 Mo. App. 25.

*James Booth* and *Bland, Crites & Murphy* for respondents.

(1) The discharge of sewage from the Bennett Hotel into the open gutter of Euclid avenue, a public thoroughfare, was a nuisance *per se.* Joyce on Nuisance, sec. 302, p. 403; Webb's Pollock on Torts, sec. 3 p. 494; Smith v. Sedalia, 152 Mo. 283; Wiffle v. McIntire, 69 Mo. App. 397; Kirchgarber v. Loyd, 59 Mo. App. 59; Beckley v. Skroh, 19 Mo. App. 75; Livengey v. Schmidt, 29 S. W. 35; Schneider-Pressnor Co. v. Bermore Co. 60 S. W. 849; Board of Health v. Heisten, 37 N. Y. 683; Ft. Worth v. Crawford, 74 Tex. 404; Barker v. Port Jarvis Light Co., 25 N. E. 246; Ball v. Nye, 99 Mass. 582; Wood on Nuisance, sec. 598; 29 Cyc., pp. 1156-1157; State v. Board of Health, 16 Mo. App. 8. (2) The city of Sullivan had notice of the nuisance, and it was not only its right, but its bounden duty, to abate it. Benton v. St. Louis, 217 Mo. 700. (3) The nuisance was a public one. Natan v. New Britton, 69 Conn. 668; Burlington v. Stockwell, 5 Kan. App. 569; Aldrich v. City of Minneapolis, 52 Minn. 164; Carlonton v. Rugg, 149 Mass. 550; Fisher v. Jumwell, 128 Cal. 493; Wiley v. Ellwood, 134 Ill. 281; Joyce on Nuisance, section 15. (4) The nuisance being a common and public one, and the city having notice of it, its officers could, in a summary manner, abate it without an ordinance. 29 Cyc. p. 1218; Coates Co. v. Mayer et al., 36 Atl. 21; Corthell v. Holmes, 32 Atl. 715; Wolfe v. Chalker, 31 Conn. 21; 3 Blackstone's Com., 6; Hilliard on Torts, 605; Lancaster T. & P. Co. v. Rogers, 2 Pa. St., 114; Harvey v. Deadwood, 18

Ark. 252; Sillman v. Wolfe, 27 Tex. 68; Barneen v. Hotchkiss, 14 Conn. 311; Bowers v. City of Aberdeen, 109 Pac. 369. (5) The nuisance was abated by the officers of the city and the act was done in the performance of a public duty and for the benefit of the public. For this act neither respondent Chiles, as mayor, nor respondent Anderson, as marshal, to whom the order was given to abate the nuisance, nor Crockett, if he was working under the orders of the marshal, and did participate in filling up the sewer with concrete, are liable in damages to the appellant. 28 Cyc. 468-F; Ely v. St. Louis, 181 Mo. 723; State ex rel. v. St. Louis, 207 Mo. 354; Murlaugh v. St. Louis, 44 Mo. 479; Breen v. Cape Girardeau, 197 Mo. 388; Whitaker v. Hospital, 137 Mo. App. 119; Harvey v. De-Woodey, 18 Ark. 252; Dooley v. City of Kansas, 82 Mo. 444; Allison v. City of Richmond, 51 Mo. App. 133; Berton v. City of Odessa, 109 Mo. App. 883; Thibadaux v. Thibadaux, 46 La. Annual, 1528; 2d Wharton on Torts (3 Ed.), 557.

NORTONI, J.—This is a suit in the nature of trespass, for damages to real property. At the conclusion of all the evidence, the court peremptorily instructed a verdict for defendants and plaintiff prosecutes an appeal from that judgment.

Plaintiff owns and operates a hotel in the city of Sullivan, Missouri, and maintained a private sewer therefrom into a public street of the city. The city of Sullivan is a city of the fourth class, of which defendant Chiles is mayor and also a member of its board of health, while defendant Anderson is marshal of the same city. Defendant Crockett is a citizen of Sullivan who owns a residence and resides immediately adjacent to the mouth of plaintiff's private sewer in Euclid avenue. It appears that numerous complaints had been filed both with the city council and the board of health of the city of Sullivan touching the matter

of plaintiff's sewer and condemning it as a nuisance, and that the city officers had frequently protested to plaintiff's manager against its maintenance and insisted upon its removal, but he declined to act in the premises. About a month or more before defendants, mayor and marshal of the city, summarily abated the nuisance, plaintiff's manager, Mr. Bennett, met with the city council and the matter pertaining to this sewer was considered. The council passed no ordinance touching it at this time but sought through moral suasion to induce plaintiff to abate the nuisance. Mr. Bennett, the proprietor and manager of plaintiff corporation, refused, however, saying, "I can't and I shan't do anything on the sewer, and I shall use every legal means to prevent any one from doing anything on it." A few days after this, the city council passed an ordinance creating a board of health which ordinance purported to confer power upon the board of health to consider, determine and abate all nuisances maintained in the city, etc. Defendant Chiles, mayor, is a member of this board of health. The board of health investigated the matter of the sewer which discharged into Euclid avenue, a public street of the city, and condemned it as a public nuisance. After so doing, plaintiff was notified in writing to abate the nuisance within forty-eight hours, but declined and omitted to do so. The board of health thereupon issued a written order to defendant Anderson, the marshal, to abate the nuisance. Under this written order by the board of health, the marshal, after advising with defendant Chiles as to the method and manner of abating the nuisance, employed a laborer to assist him and filled the sewer in two places with cement or concreate. The marshal opened the manhole permitting access to the sewer immediately in front of plaintiff's hotel and deposited a sufficient amount of concrete therein to stop the flow of sewage. He did the same

thing at another point near the outlet of the sewer at
Euclid avenue. The sewer is constructed on a private
right of way owned by plaintiff but no authority by
ordinance or otherwise appears for discharging it into
the public street of the city. The point of filling the
sewer with concrete near Euclid avenue was adjacent
to the home of defendant Crockett, and it appears that
he was present when the marshal, with Hamilton, per-
formed the task. The proof as to Crockett's conduct
in the matter is that, besides filing a complaint with
the board of health to the effect that the sewer was a
nuisance, he carried a drink of water from his well to
Hamilton, the laborer, while he was at the work, and
handed a pole to either Hamilton or the marshal with
which they removed the covering from over the sec-
ond hole through which the concrete was lodged in the
sewer. The proof suggests that Crockett was casually
present, as he was not employed by the marshal and
but incidentally countenaced the work to the extent
stated. The ordinance of the city of Sullivan creat-
ing the board of health and prescribing the manner
in which it should proceed in the abatement of nui-
sances was introduced in evidence as was also its pro-
ceedings had with respect to the matter. One section
of the ordinance requires the board of health to notify
the owner or the person having control of the nui-
sance and afford him a hearing on the question of
nuisance before action shall be taken thereon. Though
it appears complaints were filed with the board of
health touching the sewer and that the board investi-
gated and condemned it as a public menace; it appears,
too, that no notice was given to plaintiff before this
action was taken. But, immediately thereafter, plain-
tiff was notified that the board had considered and
condemned the sewer so discharging into Euclid ave-
nue as a public nuisance and ordered the flow of sew-
age to be abated within forty-eight hours.

On this appeal, plaintiff assumes the court directed a verdict for defendant at the conclusion of all the evidence on the theory that the action of the board of health and subsequent abatement of the nuisance under its order conclude the whole matter and therefore justified the acts of those who participated in the abatement. On this hypothesis, it is argued that the charter of the city confers authority on the mayor and city council alone to abate the nuisance by ordinance and that therefore the matter involves a legislative discretion which may not be delegated to the board of health. It is further argued that even if it was competent to confer the authority mentioned upon the board of health in the manner prescribed by the ordinance, then the adjudication of nuisance by the board of health and subsequent proceedings thereunder are of no avail as a justification here, for the reason that plaintiff was given no notice whatever and no opportunity to be heard before that board, although the ordinance provides for such notice. It is unnecessary to consider these arguments at all in the view we take of the case, for, if the subject-matter involved constituted a nuisance *per se*, the peremptory instruction of the circuit court may be sustained, as it appears that no unnecessary damage was done to plaintiff's property. The relevant facts touching the sewer and its character and those suggesting its offense against the public weal may be stated as follows: The sewer is a private one and conveys all of the sewage from a large building in which plaintiff owns and operates a hotel. Besides the hotel itself, consisting of a large number of rooms, there are in this building five business or store rooms and a laundry. The building is three stories in height and contains several toilet rooms, privies, or water closets, urinals, waste water pipes from sinks in the kitchen, laundry, etc. The entire sewage of all, including the stores and laundry, was conducted through this private sewer and dis-

charged into Euclid avenue, a public thoroughfare of the city, where it remained until an occasional rain would wash it away. A portion of the sewer pipe was six-inch pipe, while the remainder was twelve inches in size. The evidence is overwhelming to the effect that this discharge of sewage gave forth malodorous odors and so permeated the atmosphere as to render it foul for a considerable distance about the opening in the street. Indeed, one witness testified that while working in Euclid avenue near the mouth of the sewer, he was compelled to wear a handkerchief around his nostrils. Another testified that the odor was noticeable half a mile away. Others say that it rendered their homes almost uninhabitable in the vicinity, and there appear to be a number of private residences near about. On the other hand, there is some evidence that the sewage thus discharged into Euclid avenue emitted no noisome smell, but all of the witnesses agree that the discharge of the sewer in that street occasioned a cesspool therein. It goes without saying that such a private use of a public street of a city is inconsistent with the idea involved in its dedication in the first instance and the rights of the public for whose use and benefit it is established. This is true, too, if a cesspool results therefrom, as conceded, even though it may not emit noisome smells, as some of the witnesses say. Though the fee is in the adjacent owner, public highways belong from side to side and from end to end to the public and if one person may thus permanently devote a public street in a city to his private use as a cesspool to receive a discharge from a large building containing many toilets, water closets, urinals, together with laundry and waste water escapes, then all may do the same. [2 Elliott, Roads and Streets (3 Ed.), sec. 828.] There are many cases which declare obstructions and encroachments upon public streets to be nuisances *per se*. A fruit stand upon a city street has been declared a nuisance *per se*.

[State v. Berdetta, 75 Ind. 185, 38 Am. Rep. 117.] A stairway leading from a public alley to the second story of a building was declared a nuisance *per se* in Pettis v. Johnson, 56 Ind. 145. An awning which constituted a permanent encroachment upon the street was declared, in Hibbard v. Chicago, 173 Ill. 91, to be a nuisance *per se*. In Berry-Horn Coal Co. v. Scruggs-McClure, etc., Co., 62 Mo. App. 93, this court declared private wagon scales to be an unlawful use of a public street which the municipal authorities could not authorize. To the same effect, see State ex rel. v. Vandalia, 119 Mo. App. 406, 94 S. W. 1009 and Emerson v. Babcock, 66 Iowa 257. See, also, Elliott, Roads and Streets (3 Ed.), secs. 829, 830, 831, 832.

It is true that the subject-matter involved in all of these cases presented the question of an actual encroachment upon or obstruction to the free passage over the street, but the principle should obtain as well with respect to a cesspool from a private sewer of the dimensions and capacity of that now in judgment, for beyond question it, too, impedes and obstructs the free and untrammeled use of so much of the street as it occupies. Furthermore, a nuisance *per se,* says Mr. Joyce, as the term implies, is a nuisance in itself and one which therefore cannot be so conducted or maintained as to be lawfully carried on or permitted to exist. [Joyce on Nuisances, sec. 12.] It has been expressly decided that a city council is without power to license an individual to lay a private sewer in a public street and to discharge filth from a hotel building such as this one into an open water course therein, although the charter of the city authorizes it to cause sewers to be constructed in any part of the city where, in the judgment of the council, the public good requires the same. [See Hutchinson v. State, 39 N. J. Eq., 569, 8 Am. and Eng. Corp. Cases, 345; 2 Elliott, Roads and Streets (3 Ed.), sec. 836.] Obviously, if a private use of a public street, such as that in-

volved here, is so unlawful as to render it beyond the power of license or authorization by the city authority, then it may properly be declared a nuisance *per se*. The court did not err in treating with the matter of discharging the contents of this private sewer and creating a cesspool in the public street as a nuisance in law and directing a verdict for defendants accordingly.

In so far as defendant Crockett is concerned, the proof as to his conduct is so meager as to scarcely afford an inference of wrongdoing on his part, even if a prima facie case were made against the other defendants, but, aside from this, he was justified, because of the public character of the nuisance, on the same grounds as defendants Chiles and Anderson. No one can doubt that the nuisance was a public one, for it infringed the rights of one and all alike, and it is conceded plaintiff refused to abate it after repeated requests and urging in that behalf. In such circumstances, either a private citizen or the city officials were authorized to summarily abate the nuisance without ordinance or adjudication, provided they entailed no unnecessary damage in so doing. It conclusively appears that no unnecessary damage was done in stopping the sewer with concrete and all three of the defendants are therefore justified on this score alone, for though two were officers, all were justified as citizens injured by the thing abated. [See Wood on Nuisances (3 Ed.), sec. 743; Joyce on Nuisances, secs. 368, 369; 3 Blackstone's Commentaries, p. 6.] The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.