STATE OF MISSOURI at the relation of STRATTON SHARTEL, Attorney General, and at the relation of DRS. H. L. KERR, H. S. GOVE, W. A. CLARK, E. SANBORN. SMITH, FRANCIS McCALLUM, HORACE W. CARLE and JAMES STEWART, Constituting the State Board of Health, v. CHARLES S. HUMPHREYS, Mayor of the City of Maplewood; JOHN D. FELS and LEE WILSON, Commissioners of the City of Maplewood; L. WATERS, Street and Sewer Commissioner of the City of Maplewood; JULIUS MUELLER, City Engineer of the City of Maplewood, and the CITY OF MAPLEWOOD, a Municipal Corporation; HENRY KRALLMAN, Mayor of the City of Richmond Heights, A. H. BEARD, Engineer of the City of Richmond Heights; JOHN J. LESLIE, Street Commissioner of the City of Richmond Heights; ALBERT RILEY, HARRY SCHULZ, JOHN ANGTHIAS, M. B. STEVENS, CHARLES DU BOIS, ROBERT L. RIES, GLEN R. McCARTY, R. E. BUTLER, JOHN J. FLANAGAN, AUGUST SPAHN, Constituting the City Council of the City of Richmond Heights and the CITY OF RICHMOND HEIGHTS, a Municipal Corporation, and the CITY OF ST. LOUIS, a Municipal Corporation, Appellants. —93 S. W. (2d) 924.

Division One, April 23, 1936.

*E. H. Wayman* and *L. A. McKeown* for City of St. Louis.

*W. F. Stahlhuth* and *Chas. E. Altenbernd* for City of Maplewood.

*Roy McKittrick*, Attorney General, and *Wm. Orr Sawyers*, Assistant Attorney General, for respondents; *Leon M. Feigenbaum* of counsel.

BRADLEY, C.—The State, at the relation of the Attorney General and the State Board of Health as relators, proceeded in mandamus to compel Maplewood and Richmond Heights (cities of St. Louis County) and their officers to do certain things respecting sewer outlet and connections, all for the purpose of abating a public nuisance. Petition was filed in the Circuit Court of St. Louis County and the alternative writ issued. Maplewood and its officers, jointly; Richmond Heights and its officers, jointly; and the city of St. Louis, filed returns. Relators, in a single pleading, replied to the three separate returns. Maplewood and its officers filed reply to the return of Richmond Heights and its officers, and Richmond Heights and its officers filed reply to the return of Maplewood and its officers. From the final judgment all parties respondent below appealed to this court as appears from certified copy of judgment and order granting appeal filed here, but the abstract of the record shows only the appeal of Maplewood and its officers. Two separate certified copies of judgment and order granting appeal were sent up, and docketed under separate numbers, but the appeal situation is as stated.

The petition (including the prayer), except some preliminary allegations, is set out in full in the alternative writ. It is alleged that Maplewood and Richmond Heights are adjacent cities, the former of the third and the latter of the fourth class; that Richmond Heights lies generally to the north and east of Maplewood and where adjacent these cities are separated by Big Bend Boulevard,

a north and south highway; that, before the incorporation of either of these cities, a culvert was built under Big Bend; that the natural drainage of surface water from Richmond Heights has always been to the west or southwest through said culvert and on and into Maplewood; that for many years Richmond Heights has used (from the culvert outlet) the sewer system of Maplewood with its consent; that this sewer connection included about 1000 feet (evidence showed about 600 or 700) of open sewer in Maplewood; that this open sewer emptied into "the public sewer" of Maplewood; that, on June 19, 1930, because of complaint against the stretch of open sewer (from the culvert outlet to sewer in Maplewood), the officers of Maplewood, without notice to Richmond Heights, closed the outlet of the culvert and thereby "cut off the only available outlet" of Richmond Heights for carrying off sewage from that part of the city; that immediately (after such closing) sewage from the sewers of Richmond Heights "began to overflow into Big Bend Boulevard and into the premises of many residences in Richmond Heights, causing offensive odors that reached residences for many blocks in every direction;" that the neighborhood of the sewage overflow is thickly populated and that there is heavy traffic along Big Bend (from far and near as shown by the evidence) and that "the situation endangers the health and well being of the public generally throughout the State."

It is further alleged that relator, State Board of Health, has endeavored "to persuade" the officers of Maplewood and Richmond Heights "to come to some agreement" or a plan to abate the nuisance; that representatives of the State Board of Health have held conferences with said officers, and have inspected the scene of the sewage overflow; that, notwithstanding these efforts, nothing was done; that while the officers of these cities, Maplewood and Richmond Heights, "argued back and forth," the general public continued to suffer. It is alleged that Maplewood has a public sewer thirty-five feet (south) from the culvert, and all that is necessary to abate the nuisance "is to build a sewer from the culvert and connect it with this" sewer; that this connection could be constructed along Big Bend; that Richmond Heights has offered to pay the costs of such construction, but that these cities have failed to agree on the amount Richmond Heights should pay Maplewood "for the privilege of connecting with the Maplewood sewer;" that relator, State Board of Health, held a meeting December 2, 1930, and found "that the nuisance is a menace to the health of the people of Missouri; . . . that poluted water from sewage seepage . . . will infect persons coming in contact with it and cause typhoid fever," and it is alleged that at the meeting December 2nd, relator, State Board of Health, requested relator, Attorney General, to file

suit to abate the nuisance. The Maplewood sewers, under an agreement with the city of St. Louis, discharge into a St. Louis sewer, and such is the reason for making St. Louis a party.

The city of St. Louis, in its return to the alternative writ, admitted all allegations therein and expressed its consent for the temporary use of its sewers to accommodate the situation and get rid of the nuisance. Richmond Heights and its officers, in their joint return, likewise admit all the material allegations of the alternative writ and join in the brief of relators here.

Maplewood and its officers, in their joint return, after admission as to officers, etc., allege that "many years ago" Maplewood constructed a sewer system and paid for it by special tax bills and bonds and entered into a contract with the city of St. Louis for an outlet, "which contract provided that only sewage from the City of Maplewood should drain into the sewers of the city of St. Louis;" (St. Louis is not complaining) that Richmond Heights, under the law, has power to enact ordinances for the protection of the public health, to condemn private property, within or without the city limits, for city sewers and to abate nuisances and "to provide a sewage purification system;" that in 1925, Richmond Heights constructed a sewer which "drains surface water" and "foul water sewage" from the area affected to the culvert; that, prior to the construction of this sewer, "a ditch carried surface water only and only during heavy rains" to the culvert; that, after the construction of the sewer, the ditch (in Richmond Heights) was filled up and closed by Richmond Heights and others and the surface water and "foul sewage water" were drained thereafter into said sewer and carried to the culvert and discharged at the west end thereof into an open ditch in Maplewood and carried about 1000 feet (600 or 700) to a sewer, and that this open sewer in Maplewood was foul and gave off offensive odors and constituted a nuisance; that Maplewood officers on numerous occasions, "complained and objected (to Richmond Heights officers) to such use being made of the culvert," but all to no avail, and that on June 19, 1930, Maplewood closed the west end of the culvert "in order to abate the nuisance" (in Maplewood). Maplewood and its officers further allege that consent was never given Richmond Heights "to empty foul water sewage or surface water sewage" in said ditch in Maplewood, or to drain into Maplewood's sewer system; that relators have an adequate remedy by forcing Richmond Heights to institute and prosecute condemnation suits to condemn private property in Maplewood for sewer purposes and procure an outlet therefor in some "navigable stream," or to require Richmond Heights to install a septic tank or other purification plant; that relators have no authority to maintain this cause and no authority to demand the relief sought,

because such would be and is in violation of Sections 15, 21, 28 and 30 of Article 2, Constitution of Missouri (15—impairing obligation of contracts, 21—private property for public use, 28—right of trial by jury and 30—due process) and in violation of Section 10, Article 1, and the Fifth and Fourteenth Amendments, Constitution of the United States (impairing obligation of contracts and due process).

The judgment of the court, in substance, was: (1) That Richmond Heights construct the thirty-five feet of sewer from the culvert (south) along the public highway (Big Bend) to the Maplewood sewer; (2) that Maplewood and St. Louis permit the thirty-five feet of sewer to be connected; (3) that when so connected Maplewood reopen the culvert; (4) that Richmond Heights pay for the connection and pay Maplewood $50 per month for one year; (5) that the alternative writ be made peremptory and permanent for one year; (6) that the amount "given shall not preclude any of the three cities from adjusting their rental rights in any other suit they might see fit to bring or in motions in the present suit;" and (7) that the court retain jurisdiction "for such further orders and judgments as may to the court seem meet and proper."

We might state here that St. Louis filed separate brief here in which it is stated that said city "entered its appearance in this suit solely to assist the relators in temporarily abating the nuisance which existed." St. Louis makes only one suggestion here and that is, that this court do "not preclude it from adjusting its financial or other rights with the other cities" respecting the connection with its sewer. So we see (since Richmond Heights joins in the brief of relators here) that the controversy is between relators and Richmond Heights on the one hand and Maplewood on the other.

Maplewood, in its brief, considers many subjects, among which are: Joining mandamus with another cause of action in the same petition, eminent domain, due process, surface water and prescriptive rights. Under the pleadings and the evidence it is not necessary to consider these subjects. As we view the record only two questions arise: (1) Will mandamus lie for the relief sought and granted? (2) If so, did relators have the authority to institute and prosecute the cause?

█ It is not necessary to refer extensively to the evidence. It is sufficient to say that it stands conceded that the nuisance sought to be abated was a serious public nuisance, and that relators' evidence was along the line of the petition and alternative writ. Mandamus will not lie to compel a person or officer to do something when action in the premises, on the part of such person or officer, is discretionary and not ministerial. [State ex rel. Whitehead v. Wenom, 326 Mo. 352, 32 S. W. (2d) 59; State ex rel. Porter v. Hudson, 226 Mo. 239, l. c. 265, 126 S. W. 783; State ex rel. Pickering v. Willow

Springs, 208 Mo. App. 1, 230 S. W. 352.] But such discretion cannot be arbitrarily exercised, that is, exercised in bad faith, capriciously or by simple *ipse dixit*. When so exercised, it is regarded that there was no discretion, recognized by law and in such case mandamus will lie. [State ex rel. Adamson v. Lafayette County Court, 41 Mo. 222; State ex rel. Kelleher v. Public Schools, 134 Mo. 296, 35 S. W. 617; State ex rel. McCleary v. Adcock, 206 Mo. 550, 105 S. W. 270; State ex rel. Dolman v. Dickey, 280 Mo. 536, 1. c. 552, 219 S. W. 363; State ex rel. First National Bank v. Bourne, 151 Mo. App. 104, 131 S. W. 896.]

It is true that mandamus is not the remedy generally recognized and invoked to abate a nuisance, public or private, but such rule obtains because there is usually, in public nuisance cases, a bona fide discretion to be exercised by those on whom, it is charged, the duty to abate rests and mandamus will not lie when there is such discretion. [State ex rel. Pickering v. Willow Springs (Mo. App.), 230 S. W. 352.] It is stated in 7 McQuillin's Municipal Corp. (2 Ed.), section 1975, that "in those states where the same court is vested with both legal and equitable jurisdiction (Missouri is such) there is very little difference in its practical results between proceedings in mandamus and by mandatory injunction. . . ." Mandatory injunction may be invoked to compel the undoing of something wrongfully done. [32 C. J. 23; Walther v. Cape Girardeau, 166 Mo. App. 467, 149 S. W. 36; Place v. Union Township (Mo. App.), 66 S. W. (2d) 584.] However, mandamus has been invoked for the same purpose. [State ex rel. Snow Steam Pump Works v. Homer, 249 Mo. 58, 1. c. 65, 155 S. W. 405.]

There is evidence in the record, introduced by Maplewood, to the effect that the public sewers of Maplewood cost $137,843; that the Maplewood sewer (called the 36-inch sewer) that is thirty-five feet south from the culvert, cost $18,410.58; that fifty-five per cent of the area that would drain into this thirty-six-inch sewer, under the trial court's order of connection, is in Richmond Heights, and that only forty-five per cent of such area is in Maplewood; that the area in Richmond Heights that would drain into the thirty-six-inch sewer is five and six-tenths per cent of the total area of Maplewood. Then follows Maplewood's real contention, as we infer, in the conferences held by the State Board of Health, and which contention, we also infer, was the real cause of failure of agreement between Maplewood and Richmond Heights. Maplewood's claim, as appears in the record, is: That before Maplewood consents, or is required to consent, for the abatement of the nuisance, in the manner directed in the judgment of the court, Richmond Heights should pay to Maplewood $10,125.82, which is fifty-five per cent of the cost of the thirty-six-inch sewer and also pay $7719.20, which is five and six-tenths

per cent of the cost ($137,843) of what is called Maplewood's "public sewer," making a total, demanded by Maplewood of $17,845.02. From all this, it ought to be clear that the *discretion* that Maplewood claims the right to exercise and thus block mandamus was arbitrary and of an oppressive nature, which character of discretion, as we have seen, is not recognized. The nuisance sought to be abated was, as stated, a public nuisance. It was the public that was essentially concerned and affected, and under the peculiar situation here we rule that mandamus will lie.

The next question is: Did relators have authority to institute and prosecute this cause? The nuisance sought to be abated was a public nuisance and a grievous one, and it also appears, as alleged, that the State Board of Health endeavored without avail, to get Maplewood and Richmond Heights to agree upon some plan. Despairing of any relief by conference and persuasion, the State Board of Health brought the matter to the attention of the Attorney General and this cause was filed. Section 9015, Revised Statutes 1929 (Mo. Stat. Ann., sec. 9015, p. 4178), makes it the duty of the State Board of Health "to safeguard the health of the people in the State, counties, cities, villages and towns," and under the facts here the Attorney General could have properly proceeded with or without joining as relator with the State Board of Health. [Sec. 12276, R. S. 1929, Mo. Stat. Ann., sec. 12276, p. 586; 46 C. J. 740; State ex rel. Crow v. Canty, 207 Mo. 439, 105 S. W. 1078; State ex rel. Lamm v. City of Sedalia (Mo. App.), 241 S. W. 656; State ex rel. Detienne v. City of Vandalia, 119 Mo. App. 416, 94 S. W. 1009.]

Maplewood, as stated, considered in its brief, eminent domain, due process of law, etc. Under the judgment of the court we cannot appreciate how these subjects can be involved. It is our conclusion that the judgment should be affirmed and it is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.