CORRECTED
07/10/2019



# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MISSOURI AND SARA E. BAKER, | ) ) ) ) | WD82880 |
| Appellants, | ) ) | OPINION FILED: July 8, 2019 |
| v. | ) ) ) | |
| JOHN R. ASHCROFT, et al., | ) ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Daniel R. Green, Judge

Before Special Division: Thomas H. Newton, Presiding Judge, Mark D. Pfeiffer, Judge
and Cynthia L. Martin, Judge

The American Civil Liberties Union of Missouri and Sara E. Baker (collectively

"ACLU") appeal a trial court judgment dismissing its verified petition with prejudice and

denying pending motions in a proceeding where the ACLU sought a temporary restraining

order, preliminary and permanent injunctive relief, and declaratory relief from State

officials after a referendum petition sample sheet was rejected. Because the Secretary of

State rejected the sample sheet on constitutional grounds at a point when the Secretary of

State's exclusive authority was limited by section 116.332[1] to review of the sample sheet for sufficiency as to form, we reverse the trial court's judgment, and enter the judgment that should have been given pursuant to Rule 84.14.

## Factual and Procedural Background

Unless otherwise noted, the salient facts are uncontested.[2]

On May 17, 2019, House Bill No. 126 ("HB 126") passed in the second chamber of the Missouri General Assembly and was sent to the Governor for approval. On May 24, 2019, Governor Michael Parson signed HB 126 into law.

HB 126 repeals seven statutes (sections 135.630, 188.010, 188.015, 188.027, 188.028, 188.043, and 188.052) and replaces the repealed statutes with seventeen new provisions. The new provisions all relate to the regulation of abortions. For one of the seventeen new provisions, section 188.028, an emergency clause applies, as follows:

> Because of the need to protect the health and safety of women and their children, both unborn and born, the repeal and reenactment of section 188.028 of this act is deemed necessary for the immediate preservation of the public health, welfare, peace and safety, and is hereby declared to be an emergency act within the meaning of the constitution, and the repeal and reenactment of section 188.028 of this act shall be in full force and effect upon its passage and approval.

HB 126, sec. C. The remaining sixteen provisions of HB 126 do not contain an emergency clause.

---

[1]All statutory references are to RSMo 2016 as supplemented through May, 2019, except as otherwise noted.

[2]The pleadings in this case are limited to the ACLU's verified petition, its motion for interim injunctive relief with suggestions in support, and suggestions in opposition to that motion. In addition, there was a hearing on the motion, with arguments made by counsel. The uncontested facts are thus drawn from the facts alleged in the ACLU's petition and motion for interim injunctive relief that were admitted by the suggestions in opposition to the motion, or during the hearing on the motion.

On May 28, 2019, the ACLU submitted a referendum petition sample sheet ("Sample Sheet") to Secretary of State John ("Jay") R. Ashcroft ("Secretary of State"). The submission of a sample sheet is required by section 116.332, and is the first step required to exercise the referendum power reserved in the people by Article III, section 49 of the Missouri Constitution. The Secretary of State forwarded the Sample Sheet to Attorney General Eric S. Schmitt ("Attorney General") and to State Auditor Nicole Galloway ("Auditor") to be reviewed and processed as required by section 116.332.

On June 6, 2019, the Secretary of State notified the ACLU that its Sample Sheet was being rejected on constitutional grounds as follows: "Our legal department has determined that your referendum is not compliant with Article III, Section 52(a) of the Missouri Constitution." The Secretary of State concluded that because HB 126 contained an emergency clause, the act was constitutionally ineligible in its totality for the referendum process. The Secretary of State reported no other issues warranting rejection of the Sample Sheet. After rejecting the Sample Sheet, the Secretary of State withdrew the Sample Sheet from the Attorney General and the Auditor.

On June 6, 2019, the ACLU filed suit in the Circuit Court of Cole County, Missouri against the Secretary of State, the Attorney General, and the Auditor, in their representative capacities (collectively referred to as "the State"). The ACLU's verified petition sought a temporary restraining order, preliminary and permanent injunctive relief, and declaratory relief. The petition sought a declaration that HB 126 is not subject to an emergency clause that forecloses exercise of the power of referendum; a declaration that the Sample Sheet was sufficient as to form and should have been approved; permanent injunctive relief

3

prohibiting the State from rejecting the Sample Sheet on the basis of the emergency clause applicable to section 188.028 of HB 126; permanent injunctive relief requiring the Secretary of State to approve the Sample Sheet, to prepare a ballot summary statement, and to certify the official ballot title; permanent injunctive relief requiring the Auditor to prepare a fiscal note and fiscal note summary; and permanent injunctive relief requiring the Attorney General to approve the ballot summary statement and fiscal note.

The ACLU then filed a motion for temporary restraining order and for a preliminary injunction, and set the motion for hearing on June 11, 2019. The ACLU's motion was accompanied by suggestions in support which alleged that the Secretary of State had no authority to consider constitutional matters in connection with his review of the Sample Sheet for sufficiency as to form pursuant to section 116.332, and that in any event, the Secretary of State could not rely on the emergency clause applicable to section 188.028 to reject the Sample Sheet because a court must decide whether an emergency clause is legitimate, and because the emergency clause did not apply to all of the provisions of HB 126. The ACLU noted the urgency of the circumstances, as it is prohibited from collecting signatures on a referendum petition until the Sample Sheet is approved, until the fiscal note and summary are prepared, and until the ballot summary and title are prepared and certified. The ACLU thus noted the urgency of time, as referendum petitions with sufficient signatures must be submitted no later than ninety days after adjournment of the general assembly.

The State filed suggestions in opposition to the motion. The State acknowledged that the Sample Sheet was rejected based solely on the emergency clause applicable to

4

section 188.028 of HB 126. The State argued that temporary and preliminary injunctive relief could not be used to compel the Secretary of State to approve the Sample Sheet because interim injunctive relief is limited to preserving the status quo; that even if the Secretary of State was obligated to approve the Sample Sheet, the ACLU could not enforce that obligation because section 116.332 describes directory and not mandatory acts; and that in the alternative, the exclusive remedy available to the ACLU to compel the Secretary of State to approve the Sample Sheet is mandamus, relief not sought in the ACLU's petition.

On June 11, 2019, the parties appeared by counsel to argue the ACLU's motion. At the same time, counsel representing David Humphreys ("Humphreys"), the proponent of a separate referendum petition addressing HB 126, also appeared. Humphreys' referendum petition sample sheet had been identically rejected by the Secretary of State. Humphreys filed his own lawsuit on June 7, 2019 which similarly sought a temporary restraining order, preliminary and permanent injunctive relief, and declaratory relief.[3] Though the ACLU's and Humphreys' lawsuits were not consolidated, the trial court consolidated the hearing on the ACLU's and Humphreys' motions for temporary and preliminary injunctive relief.

During a brief hearing on the pending motions where no evidence was taken,[4] the parties repeated their arguments in support of and in opposition to the motions for temporary and preliminary injunctive relief. After hearing the parties' arguments, the trial court noted on the record:

> I do believe that you're asking me to compel the State actor and the Secretary
> of State to do something, so I do think that a writ of mandamus would have

---

[3]This action is styled *David Humphreys, et. al. v. John R. Ashcroft, et. al*., Case No. 19AC-CC00249.
[4]The transcript is only seventeen pages long.

5

to issue from the court. And I think [the State's counsel] is correct, that neither party has asked me to do that.

So I'll give you a choice. I know that this is a time sensitive case. Do you want leave to re-file your petition, or do you want me to dismiss it and you re-file? Or do you need a minute to talk . . . about that?

The trial court clarified that if leave to amend was afforded, the court presumed the parties would amend their petitions to add a request for a writ of mandamus. Alternatively, the trial court indicated it would "dismiss this case and you can re-file it." The ACLU and Humphreys were granted leave to file amended petitions by June 13, 2019, and the parties were directed to reconvene on June 17, 2019.

The ACLU did not file an amended petition.[5] On June 13, 2019, the trial court entered its order and judgment ("Judgment") in the ACLU's case as follows:

Being fully advised, the Court dismisses [the ACLU's] petition and all claims with prejudice.

IT IS THEREFORE ORDERED AND DECREED:

1.    [The ACLU's] petition is dismissed with prejudice.

2.    All pending motions are overruled.

On June 19, 2019, the ACLU filed this appeal.

## Expedited Disposition of Appeal

We have expedited the disposition of this appeal. Pursuant to Article III, section 52(a) of the Missouri Constitution, "[r]eferendum petitions shall be filed with the secretary of state not more than ninety days after the final adjournment of the session of the general

---

[5]Humphreys did file an amended petition which added a request for a writ of mandamus. That request for a writ of mandamus was summarily denied without prejudice on June 17, 2019, and all other claims in Humphreys' amended petition were dismissed with prejudice. Humphreys' dismissed lawsuit is not the subject of this appeal.

6

assembly which passed the bill on which the referendum is demanded." Section 116.100 provides that "[t]he secretary of state shall not accept any referendum petition submitted later than 5:00 p.m. on the final day for filing referendum petitions." Section 116.334 prohibits the proponent of a referendum petition from beginning the signature collection process essential to filing a referendum petition until the steps described in sections 116.332 and 116.334 have been completed, one of which is the secretary of state's[6] approval of a referendum petition sample sheet as sufficient as to form. The Secretary of State's rejection of the Sample Sheet has thus thwarted the ACLU's ability to proceed with signature collection, and has the effect of compressing the already limited time available to exercise the power of referendum.

## Standard of Review

The trial court's Judgment dismissed the ACLU's petition *with prejudice*, and thus dismissed the petition's claims for declaratory and permanent injunctive relief. The Judgment also denied the ACLU's pending motion for interim injunctive relief.

The denial of interim injunctive relief is ordinarily interlocutory and ineligible for appellate review.[7] In any event, the Judgment's denial of the ACLU's motion for interim injunctive relief is mooted by the Judgment's dismissal with prejudice of the ACLU's requests for declaratory and permanent injunctive relief. We limit our review on appeal,

---

[6]We refer generally to the office of the secretary of state without capitalizations.

[7]"[O]rders entered during the temporary injunction stage are not final, appealable orders. . . . No appeal lies from the denial of a preliminary injunction." *Eickelmann v. Eickelmann*, 724 S.W.2d 261, 262 (Mo. App. W.D. 1986) (other citations omitted). *But see*, *Furniture Mfg. Corp. v. Joseph*, 900 S.W.2d 642, 646 (Mo. App. W.D. 1995) (holding that an appeal from the denial of interim injunctive relief may be warranted where "the practical effect of a dismissal of the appeal would be to deprive the appellant of any equitable relief altogether").

therefore, to the Judgment's dismissal with prejudice of the petition's claims for declaratory relief and permanent injunctive relief.

When the Judgment was entered, no written motion to dismiss, for judgment on the pleadings, or for summary judgment, was pending. However, the State's suggestions in opposition to the ACLU's motion for interim injunctive relief, along with the State's argument at the hearing on the motion, clearly reflect the State's position that the ACLU's petition was without merit as a matter of law, even assuming all facts therein stated were true: (i) because the Secretary of State's obligation to review and approve a referendum petition sample sheet is merely directory and not mandatory, and cannot be compelled; (ii) because the Secretary of State acted within his authority to reject the Sample Sheet because HB 126 includes an emergency clause, and the Missouri Constitution prohibits exercise of the power of referendum in connection with an act that includes an emergency clause; and (iii) because in any event, mandamus is the exclusive remedy available to compel a State actor to do that which is required by statute, and mandamus was not pled.

Because the trial court dismissed the ACLU's petition with prejudice before any evidence was taken, we conclude that the Judgment was in the nature of a judgment on the pleadings. "A trial court properly grants a motion for judgment on the pleadings if, from the face of the pleadings, the moving party is entitled to judgment as a matter of law." *State ex rel. Nixon v. American Tobacco Co., Inc.*, 34 S.W.3d 122, 134 (Mo. banc 2000). Ordinarily, that requires us to treat all well-pleaded facts as admitted for purposes of our review. *See Emerson Electric Co. v. Marsh & McLennan Companies*, 362 S.W.3d 7, 12 (Mo. App. W.D. 2012). Here, there are no salient facts in dispute. Instead, the only issues

before us are legal questions: whether the Secretary of State acted in excess of his statutory authority by rejecting the Sample Sheet on constitutional grounds, and if so, whether the ACLU is entitled to compel the Secretary of State to approve the Sample Sheet with permanent injunctive relief. We address these legal issues *de novo*. *Jones v. Fite*, 207 S.W.3d 614, 616 (Mo. banc 2006) (holding that where the issue on review is "purely a legal one," we "review[] the trial court's judgment de novo").

## Analysis

The ACLU raises a single point on appeal. The ACLU alleges that it was error to dismiss its petition with prejudice because: (i) the Secretary of State had no authority to review the Sample Sheet at this stage in the referendum process except for its sufficiency as to form; (ii) there is no emergent public need that justifies expediting an effective date for any section of HB 126; and (iii) even if an emergency clause is properly invoked as to section 188.028 of HB 126, that does not deprive the people of the power of referendum for the remaining sixteen sections of the act which are not subject to an emergency clause.

As we hereinafter explain, the ACLU's appeal can be resolved by addressing only the first of these multiple claims.[8] That resolution requires us to explain the people's reserved power of referendum, and to analyze the parameters of the secretary of state's statutory authority to review referendum petitions, including sample sheets.

---

[8]The ACLU's point on appeal violates Rule 84.04, as it identifies three distinct and separate reasons why the trial court's Judgment is allegedly in error. *Kirk v. State*, 520 S.W.3d 443, 450 n. 3 (Mo. banc 2017) (holding a point relied on violates Rule 84.04 if "it groups together multiple, independent claims rather than a single claim of error"). A multifarious point on appeal preserves nothing for appellate review. *Id*. However, as explained in this Opinion, resolution of the first claim raised in the ACLU's multifarious point on appeal is sufficient to resolve this appeal. We therefore exercise our discretion to review the merits of the first claim raised in the ACLU's point on appeal. *See Griffitts v. Old Republic Insurance Company*, 550 S.W.3d 474, 478 (Mo. banc 2018); *Spence v. BSNF Ry. Co.*, 547 S.W.3d 769, 779 n. 12 (Mo. banc 2018).

*The Power of Referendum*

Article III, section 49 of the Missouri Constitution expressly reserves to the people the "power to approve or reject by referendum any act of the general assembly, except as hereinafter provided." The "'[p]urpose of referendum is to suspend or annul a law which has not gone into effect and to provide the people a means of giving expression to a legislative proposition, and require their approval before it become[s] operative as a law[.]'" *Stickler v. Ashcroft*, 539 S.W.3d 702, 713 (Mo. App. W.D. 2017) (quoting *State ex rel. Moore v. Toberman*, 250 S.W.2d 701, 706 (Mo. banc 1952) (citation omitted)).

Consistent with this purpose, the "exception" to the people's referendum power referred to in article III, section 49 is set forth in article III, section 52(a) of the Missouri Constitution, which provides in pertinent part as follows:

> A referendum may be ordered (except as to laws necessary for the immediate preservation of the public peace, health or safety, and laws making appropriation for the current expenses of the state government, for the maintenance of state institutions and for the support of public schools)[.]

The portion of the aforesaid exception addressing laws necessary for immediate preservation of the public peace, health or safety recognizes that the general assembly has the constitutional authority pursuant to article III, section 29 to express an emergency "in the preamble or in the body of [an] act" as to permit an act to take immediate effect. This is in lieu of the ordinary proscription that a law does not "take effect until ninety days after adjournment of the session . . . at which it was enacted." Art. III, sec. 29 Missouri Constitution.

10

Here, an emergency clause applied to section 188.028. The emergency clause employed language drawn directly from the exception to the power of referendum described in article III, section 52(a) of the Missouri Constitution. The parties disagree about whether the general assembly's declaration of emergency is self-actuating as to defeat the power of referendum as a matter of law, or instead remains subject to judicial review to determine its legitimacy. And the parties disagree about whether an emergency clause can circumvent the people's power of referendum when it is only attached to one of multiple provisions in an act.

These disputed legal issues are important ones, and are the subject of the second and third claims raised in the ACLU's point on appeal.[9] However, these legal issues need not be addressed or resolved, *unless* the Secretary of State's statutory authority to review the Sample Sheet for sufficiency as to form included the authority to consider the effect of the emergency clause in section 188.028. We therefore turn our attention to the secretary of state's statutory authority to review referendum petition sample sheets, the subject of the first claim raised by the ACLU's point on appeal. No Missouri case has addressed the parameters of the secretary of state's authority to review a referendum petition sample sheet for sufficiency as to form, rendering this an issue of first impression.

### *The Secretary of State's Authority to Review Referendum Petition Sample Sheets*

The process for exercising the power of referendum authorized by the Missouri Constitution is described in chapter 116. Chapter 116 describes two occasions where the

---

[9]An amicus brief was filed on behalf of Speaker Elijah Haahr, Representative Nick Schroer, and President Pro Tem Dave Schatz in support of the Secretary of State and the Attorney General. The amicus brief was limited in its discussion to these two issues.

11

secretary of state's review is required during the referendum process: (i) the pre-signature collection review of a sample sheet authorized by section 116.332; and (ii) the post-signature collection review of a submitted referendum petition and its signatures authorized by section 116.120. *See Bradshaw v. Ashcroft*, 559 S.W.3d 79, 86 (Mo. App. W.D. 2018) (explaining that "chapter 116 bifurcates the secretary of state's authority with respect to the initiative [and referendum] process into two stages:  the pre-signature collection stage and the post-signature collection stage").

The first step taken to initiate the referendum process is a proponent's submission of a referendum petition sample sheet.  Before a referendum petition can be circulated for signatures, "a sample sheet must be submitted to the secretary of state in the form in which it will be circulated."  Section 116.332.1.  The secretary of state is then obligated to "refer a copy of the petition sheet to the attorney general for his approval and to the state auditor for purposes of preparing a fiscal note and fiscal note summary."[10]  *Id.*  "The secretary of state and attorney general must each review the petition for sufficiency as to form and approve or reject the form of the petition, stating the reasons for rejection, if any." *Id.*  The attorney general must forward his rejection of the petition as to form with comments, or his approval of the petition as to form, to the secretary of state within ten days.[11]  Section

---

[10]The Auditor did not file a brief in this appeal, because, as she advised this Court by letter dated June 27, 2019, following the Secretary of State's referral of the Sample Sheet to her pursuant to section 116.332.1, the Auditor complied with her statutory obligation to prepare a fiscal note and fiscal note summary as required by section 116.175.2.  The Auditor advised this Court that she has already sent her fiscal note and fiscal summary to the Attorney General for review pursuant to section 116.175.4, and that once the Attorney General's approval is received, she will immediately send the fiscal note and fiscal note summary to the Secretary of State.

[11]During oral argument, the Attorney General's office confirmed that it is the office's ordinary practice to publish, as an opinion of the Attorney General, the Attorney General's recommended approval or rejection of a submitted sample sheet, along with the reasons therefore.  No such opinion has been published by the Attorney General for the ACLU's Sample Sheet.  However, the Attorney General opinions that are publicly posted expressly

12

116.332.3. However, "[t]he secretary of state shall . . . make [the] final decision as to the approval or rejection of the form of the petition." Section 116.332.4. Within fifteen days of submission of the petition sample sheet, the secretary of state shall send written notice to the person who submitted the petition sample sheet either that the sample sheet has been approved as to form, or rejected as to form. *Id*. If the secretary of state rejects the petition sample sheet as to form, the written notice of same shall include "the reasons for rejection." *Id*.

If a referendum petition sample sheet is approved, the secretary of state must make the sample petition available on the secretary of state's website to provide a fifteen day public comment period. Section 116.334.1. And, within twenty-three days of approval of the sample sheet, the secretary of state is required to "prepare and transmit to the attorney general a summary statement of the measure," which the attorney general must thereafter approve as to "legal content and form" within ten days. *Id*.

Collectively, the procedures described in sections 116.332 and 116.334 could take as long as forty-eight days. Section 116.332.4; section 116.334.1. A referendum petition proponent cannot begin collecting signatures, however, until all of the steps required by section 116.332 and section 116.334 have been completed by the State. Section 116.334.2. At the same time, a referendum petition with the requisite number of signatures must be submitted no later than "ninety days after the final adjournment of the session of the general

---

state that review is pursuant to section 116.332, and is "simply for the purpose of determining sufficiency as to form," and that the fact the Attorney General has not rejected the sample sheet "is not to be construed as a determination that the petition is sufficient as to substance." *See* https://ago.mo.gov/other-resources/ag-opinions/opinions-2010---2019/2019-opinions

assembly which passed the bill on which the referendum is demanded." Art. II, sec. 52(a), Missouri Constitution. It is self-evident, therefore, that delays in the State's performance of its obligations in the pre-signature collection stage of the referendum process can have the practical effect of foreclosing meaningful exercise of the power of referendum.

Sections 116.332 repeatedly uses the phrase "sufficiency as to form" to describe the secretary of state's statutory authority during the "pre-signature collection stage" of the referendum process to approve or reject a sample sheet. Though the phrase "sufficiency as to form" in section 116.332 is not afforded an express statutory definition, section 116.030 effectively serves as the definition for the phrase, as it addresses the required form of a referendum petition sample sheet, and includes an exemplar form. Importantly, section 116.030 provides that the exemplar form "shall be substantially the form of each page of referendum petitions on any law passed by the general assembly of the State of Missouri," and that "[i]f this form is followed substantially and the requirements of section 116.050 and section 116.080[12] are met, *it shall be sufficient*, disregarding clerical and merely technical errors." (Emphasis added.)

Because section 116.030 describes the required form of a referendum petition sample sheet, and directs that a sample sheet in substantially the form of the exemplar form

---

[12]"Section 116.050 addresses other requirements for the form of [referendum] petitions, including page size, the requirement that each page of the [referendum] petition attach or contain a full and correct text of the proposed measure, and the format and content of the full and correct text of the proposed measure." *Bradshaw*, 559 S.W.3d at 84 (citing sections 116.050.1 and .2). Section 116.050 also requires the form of initiative and referendum petitions to "conform to the provisions of Article III, Section 28 and Article III, Section 50 of the constitution and those of this chapter." Article III, section 28 addresses the reviving, renewing or amendment of bills, and is thus not applicable to the referendum process. Article III, section 50 addresses the signatures requirements for initiative petitions, and by its plain terms is not applicable to referendum petitions. "Section 116.080 addresses the required qualifications of and registration requirements for an initiative petition circulator[.]" *Id*. (citing section 116.080.1). No party argues that sections 116.050 or 116.080 are of any relevance in this case.

14

"shall be sufficient," we conclude that the phrase "sufficiency as to form" in section 116.332 refers to whether a sample sheet is in substantially the form required by section 116.030. "When determining the legislative intent of a statute, no portion of the statute is read in isolation, but rather the portions are read in context to harmonize all of the statute's provisions." *BASF Corp. v. Dir. of Revenue*, 392 S.W.3d 438, 444 (Mo. banc 2012) (per curiam).

This conclusion happens to comport with the plain and ordinary dictionary meaning of the word "form" when used in a context that is relevant to sample sheets. *See R.M.A. by Appleberry v. Blue Springs R-IV School District*, 568 S.W.3d 420, 431 (Mo. banc 2019) (holding terms in a statute that are not defined assume their plain and ordinary dictionary definition). The word "form," when referring to a form of document, means: "**4 a** : manner, method, or style (as of proceeding) **b** : established method of expression or practice : fixed or formal way or proceeding : procedure according to rule or rote **c** : a prescribed and . . . set order of words . . . . **e (1)** : a printed or typed document with blank spaces for insertion of required or requested specific information . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 892 (1993). Consistent with this dictionary definition, section 116.030 provides an exemplar form that uses a prescribed and set order of words, with blank spaces for insertion of required or requested information; and that directs that a submitted sample sheet "shall be sufficient" if its form is substantially in compliance with the exemplar.

Neither section 116.030 nor the dictionary definition of "form" permit the conclusion that review of a sample sheet for "sufficiency as to form" pursuant to section

15

116.332 extends to matters of substance, including constitutional compliance. Instead, the phrase "as to form" plainly qualifies the secretary of state's authority to review the sufficiency of a sample sheet, an observation that is compelling in and of itself, as the qualifier "as to form" would be rendered unnecessary and superfluous if review of a sample sheet for "sufficiency" extended to all matters, including substantive and constitutional matters. "When interpreting a statute, this Court must give meaning to every word or phrase of the legislative enactment." *State ex rel. Jackson v. Dolan*, 398 S.W.3d 472, 479 (Mo. banc 2013). "Courts never presume that our legislature acted uselessly and should not construe a statute to render any provision meaningless." *Caplinger v. Rahman*, 529 S.W.3d 326, 332 (Mo. App. S.D. 2017) (en banc).

Bolstering this conclusion is section 116.120, which addresses the secretary of state's authority to review the sufficiency of a referendum (or initiative) petition submitted *after* signatures have been collected, and thus as a part of the "post-signature collection stage" of the referendum process. *Bradshaw*, 559 S.W.3d at 86 (explaining that the secretary of state's review authority during exercise of the initiative or referendum process is bifurcated into the pre-signature collection stage addressed in section 116.332 and the post-signature collection stage addressed in section 116.120). Section 116.120.1 provides in part that:

> When an initiative or referendum petition is submitted to the secretary of state, he or she shall examine the petition *to determine whether it complies with the Constitution of Missouri and with this chapter*.

(Emphasis added.) Section 116.120 continues to describe the guidelines and processes to be employed by the secretary of state to determine the validity of signatures on a

16

referendum (or initiative) petition. Importantly, in sharp contrast to the qualified authority extended to the secretary of state in section 116.332 to review a sample sheet for sufficiency as to form, section 116.120 authorizes the secretary of state to review a submitted referendum petition to determine compliance with the Constitution of Missouri and the provisions of chapter 116. "[I]f different terms are used in different subsections of [a] statute, then the legislature intended the terms to have different meaning and effect." *City of Cape Girardeau v. Elmwood Farms, L.P.*, 2019 WL 1029634 at *2, (Mo. App. S.D. April 11, 2019) (citation omitted).

Based on the plain and unambiguous language of section 116.332, particularly when considered along with section 116.120.1, we conclude that the secretary of state's authority to review a referendum petition sample sheet for sufficiency as to form is limited to determining whether the sample sheet is substantially in the form required by section 116.030, and if it is, that the secretary of state *shall* deem the sample sheet sufficient. Section 116.030. Correspondingly, we conclude that the secretary of state's authority to review a referendum petition sample sheet for sufficiency as to form does not extend to substantive matters including, without limitation, determining compliance with the Missouri Constitution.[13]

---

[13]We do not address, and express no opinion about, the effect of a submitted referendum petition on the suspension of the effective date of a referred act, should the secretary of state determine pursuant to section 116.120 that a submitted referendum petition fails to comply with the Missouri Constitution. *See* Article III, section 52(b) of the Missouri Constitution which provides that "[a]ll elections on measures referred to the people shall be had at the general state elections . . . . Any measure referred to the people shall take effect when approved by a majority of the votes casts there on, and not otherwise." That issue is beyond the scope of this Opinion.

Bifurcated review during the referendum process pursuant first to section 116.332, and then to section 116.120, and constrained by markedly different statutory authority, prevents the people's reserved referendum power from being summarily and effectively foreclosed at the pre-signature collection stage by a sufficiency determination that extends beyond the simple form of the sample sheet. Because the proponent of a referendum petition cannot begin to collect signatures unless the sample sheet is approved, rejection of a sample sheet based on the secretary of state's belief that a proponent is not constitutionally authorized to exercise the referendum power effectively forecloses the exercise of that power, given the short amount of time available to gather the requisite number of required signatures before a referendum petition can be submitted. In contrast, though a sample sheet is reviewed and approved as sufficient as to form pursuant to section 116.332, the secretary of state nonetheless retains the right to conduct broader review of a submitted referendum petition (complete with signatures) for compliance with the constitution and the provisions of chapter 116.[14] Section 116.120.1.

The aforementioned sections of chapter 116 reflect a calculated intent by the general assembly to balance procedural oversight of the referendum process with the people's ability to meaningfully exercise the power of referendum. Were we to construe section 116.332 to afford the secretary of state the authority to reject a referendum petition sample

---

[14]Following section 116.120 review of a submitted referendum petition, the secretary of state must decide whether (or not) to certify the petition for inclusion on the ballot. Section 116.150. After that decision is made, any citizen, including the proponent of the referendum petition, can bring an action in the Cole County Circuit Court within ten days to compel the secretary of state to reverse his decision to certify (or not) the petition for inclusion on the ballot. Section 116.200.1. The court's resolution of that dispute then controls whether the referendum petition will appear on the ballot. Section 116.200.2.

sheet for a reason other than its sufficiency as to form as defined by section 116.030, we would be sanctioning a process that could potentially foreclose exercise of the power of referendum, as litigating the rejection of a sample sheet on substantive or constitutional grounds before signatures can be collected erects a nearly insurmountable obstacle to exercise of the power of referendum. We will not construe section 116.332 to impede the people's power of referendum, particularly when the plain and unambiguous language of section 116.332 supports a construction that preserves meaningful exercise of the power. Our Supreme Court has explained that our courts "zealously guard" the powers reserved by the people in the Missouri Constitution. *Boeving v. Kander*, 496 S.W.3d 498, 506 (Mo. banc 2016). As such, "'[c]onstitutional and statutory provisions relative to initiative [and referendum] are liberally construed to make effective the people's reservation of that power.'" *Id*. (quoting *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 827 (Mo. banc 1990)).

### *The Secretary of State Rejected the ACLU's Sample Sheet for a Reason that was not Related to the Sufficiency as to Form of the Sample Sheet*

When the Secretary of State rejected the ACLU's Sample Sheet, he explained in writing his basis for doing so as required by section 116.332.4, and noted that because of the emergency clause in section 188.028 of HB 126, it was legal counsel's opinion that the Missouri Constitution prohibited exercise of the power of referendum. For the reasons we have explained, the Secretary of State's rejection of the Sample Sheet on constitutional grounds was not authorized by section 116.332. The Secretary of State's statutory authority to review the Sample Sheet pursuant to section 116.332 was limited to determining whether

19

the Sample Sheet was sufficient as to form pursuant to section 116.030, a review that does not include determining compliance with the Missouri Constitution.[15]

The Secretary of State did not identify any other issue with the Sample Sheet, and has not asserted that the Sample Sheet failed to substantially comply with the exemplar form in section 116.030. The Secretary of State was therefore obligated by section 116.332 to approve the Sample Sheet as sufficient as to form within fifteen days of its submission. *See also* section 116.030.

The trial court therefore committed legal error when it dismissed the ACLU's petition with prejudice. The ACLU's petition asserted a claim for declaratory relief, and properly sought a declaration that the Secretary of State had no authority to reject the Sample Sheet on constitutional grounds, and was instead required to approve the Sample Sheet as sufficient as to form.

The Secretary of State argues that even if we conclude (which we have) that the ACLU was entitled to a declaratory judgment declaring that the Secretary of State was required to approve the Sample Sheet as sufficient as to form, the ACLU cannot enforce that determined right. First, the Secretary of State alleges that the ACLU cannot remediate

_____

[15]We are cognizant that in addressing pre-election constitutional challenges to ballot measures, our cases have held that pre-election challenges to an initiative or referendum petition can only be conducted by the courts if the challenge raises a "threshold issue[] that affect[s] the integrity of the election itself," and when the constitutional issue is so clear a violation of required procedure that it "constitute[s] a matter of form." *Brown v. Carnahan*, 370 S.W.3d 637, 645 (Mo. banc 2012) (quotation omitted); *see also Missouri Electric Cooperatives v. Kander*, 497 S.W.3d 905, 912 (Mo. App. W.D. 2016). That discussion, however, is limited in its relevance to the issue of ripeness, and addresses the *judiciary's* limited authority to intervene or interfere in the initiative or referendum process. *Brown*, 370 S.W.3d at 645; *Missouri Electric Cooperatives*, 497 S.W.3d at 912. Determining whether a pre-election constitutional challenge to a ballot measure is ripe for *judicial* review is a wholly separate inquiry from determining the secretary of state's statutory authority pursuant to section 116.332 to review a sample sheet for "sufficiency as to form."

20

the Secretary of State's failure to approve the Sample Sheet because that obligation is merely directory, and not mandatory, in nature. Second, the Secretary of State argues that even if the obligation to approve the Sample Sheet can be enforced, mandamus and not injunctive relief is the only available means to do so.[16] We address these claims in turn.

***It is Irrelevant Whether the Secretary of State's Obligations under Section 116.332 are Directory or Mandatory because the ACLU is not Seeking a Sanction for the Secretary of State's Failure to Comply***

The Secretary of State argues that even though section 116.332 provides that the secretary of state "must" review a referendum petition sample sheet for sufficiency as to form and approve or reject the form of the petition, and "shall" send written notice if the sample sheet is rejected with fifteen days of its submission stating the reasons for rejection, a proponent of a referendum petition has no remedy if the secretary of state fails to take

---

[16]The Secretary of State and the Attorney General argue that the ACLU's appeal must be dismissed because the ACLU's point on appeal has not challenged the Judgment on a basis on which it could be affirmed--namely, that mandamus is the only means available to compel the Secretary of State to approve the Sample Sheet. We disagree. The Judgment dismissed the ACLU's petition ***with prejudice***. During argument on the ACLU's motion for interim injunctive relief, the trial court expressed no intent to dismiss the ACLU's petition ***with prejudice*** based on the ACLU's failure to request a writ of mandamus. Instead, the trial court said it would ***either*** grant the ACLU leave to amend its petition, ***or*** it would dismiss the petition and permit the ACLU to re-file--a dismissal that would have been ***without*** prejudice.

Moreover, even if we disregard the trial court's on-the-record comments, the Judgment dismissing the ACLU's petition ***with prejudice*** cannot be affirmed based on the ACLU's failure to request a writ of mandamus, as that issue had nothing to do with the merits of the ACLU's independent claim for a declaration that the Secretary of State exceeded his statutory authority when he rejected the Sample Sheet. The State does not challenge the ACLU's ability to seek a declaratory judgment to this effect--a claim that stands alone, and is independent of, any remedy the ACLU might seek to enforce a determined right. The Judgment's dismissal with prejudice of the declaratory judgment claim cannot be explained based on the ACLU's failure to request a writ of mandamus.

Finally, the ACLU's request for permanent injunctive relief is not a legal theory that can independently support (or fail to support) a right of recovery, and thus is not a "claim," the merits (or lack thereof) of which could have supported dismissal of the ACLU's petition ***with prejudice*** so early in the proceedings. "[A]n injunction is a remedy and not a cause of action; therefore it must be based on some recognized and pleaded legal theory." *Goerlitz v. Maryville*, 333 S.W.3d 450, 455 (Mo. banc 2011). The only recognized and pleaded legal theory in the ACLU's petition was the claim for a declaratory judgment. Whether an injunction was available as a remedy to enforce rights declared pursuant to this claim is not an issue that could have supported the entry of a Judgment dismissing the petition with prejudice. The trial court plainly recognized this fact, as it never threatened to dismiss the ACLU's petition ***with prejudice*** based solely on the failure to request a writ of mandamus.

The Secretary of State's and Attorney General's motion to strike portions of the ACLU's Reply Brief and to dismiss the ACLU's appeal is denied.

21

these admittedly required steps, or takes the steps in a manner that exceeds the secretary of state's statutory authority. The Secretary of State argues that because section 116.332 does not impose a sanction on the secretary of state for non-compliance with the obligation to approve a sample sheet, the obligation is merely directory and not mandatory, and the courts are not free to fashion a sanction.

The Secretary of State relies on the Missouri Supreme Court's holding in *Frye v. Levy*, 440 S.W.3d 405 (Mo. banc 2014). *Frye* is irrelevant to this case. In *Frye*, a statute obligated the Children's Division to complete a hotline investigation within ninety days, but did not prescribe the effect should the Children's Division fail to do so. *Id.* at 408. A parent who was the subject of a hotline investigation took the position that the Children's Division's failure to complete its investigation within ninety days resulted in the Division losing all authority to make the abuse determinations permitted by the statute. *Id.* The Supreme Court framed the issue before it as follows:

> [W]hen (but only when) a statute imposes an obligation, the statutory construction question embodied in the distinction between "mandatory statutes" and "directory statutes" is whether the legislature intended to make all actions that fail to comply with that obligation void or ineffective.

*Id.* at 409. Determining whether the statute at issue was directory or mandatory was thus necessary because the parent sought a sanction for non-compliance—voiding or rendering ineffective the Division's authority to investigate an abuse claim. *Id.* at 408. ("[t]he central issue in this case is not whether 'shall' means 'shall' but what sanction (if any) the legislature intended to apply when the Division fails to do what section 210.152.2 says it 'shall' do.).

22

In contrast to the parent in *Frye*, the ACLU is not arguing that the Secretary of State failed to make a decision about its Sample Sheet within 15 days as required by statute. The ACLU is not arguing that the Secretary of State's authority to review the referendum process has been voided or is now ineffective. Instead, the ACLU is arguing that the Secretary of State employed a standard for reviewing the sufficiency of its Sample Sheet that exceeded the Secretary of State's statutory authority. The ACLU is not seeking a sanction for the Secretary of State's act in excess of his authority. It is instead seeking to compel the Secretary of State to comply with his statutory obligations. In *Frye*, the Supreme Court recognized the difference:

> Mother is not seeking a declaration that the Division had [a duty to complete its investigation in ninety days], nor is she seeking a writ of mandamus to compel the Division to perform that duty.

*Id.* at 408. In other words, the parent in *Frye* was not seeking to compel the Division to complete its investigation. It was attempting to sanction the Division for failing to timely complete its investigation. By highlighting what the parent in *Frye* was ***not*** seeking, the Supreme Court necessarily limited the relevance of its discussion about the directory or mandatory nature of a statute to scenarios where a sanction is sought to "punish" non-performance of a statutory obligation.

Because the ACLU is not seeking a sanction for the Secretary of State's non-performance of a statutory obligation, and is instead seeking to compel the Secretary of State to perform a statutory obligation, *Frye* is not applicable to this case. There is no authority whatsoever cited by the Secretary State for the proposition that a State actor cannot be compelled to perform a duty or act required by statute.

23

***Mandamus is not the Only Remedy Available to Compel the Secretary of State to Perform as Required by Section 116.332***

The Secretary of State alternatively argues that if the Secretary of State's obligation to approve the Sample Sheet as sufficient as to form can be compelled, it can only be compelled by a writ of mandamus, relief not sought by the ACLU. The Secretary of State relies on *State ex rel. Westhues v. Sullivan*, 224 S.W. 327 (Mo. banc 1920) for the proposition that in challenging the Secretary of State's action under chapter 116, there are but two remedies: "(1) mandamus against the Secretary of State, in an action by a citizen, if such Secretary refuses to accept and file a legally sufficient petition; and (2) an injunction against such Secretary if he accept and file a legally insufficient petition." *Id*. at 333. According to the State, the ACLU's challenge falls into the first category, leaving mandamus as the only remedy available to compel the Secretary of State to act.

The Secretary of State's reliance on *Westhue*s is misplaced. The State neglects to mention that the quoted material it cites from *Westhues* is not a holding, but merely a restatement by the court of the content of a statute then in effect, section 6750, R.S. 1909. In *Westhues*, our Supreme Court was asked to address the prematurity of a judgment enjoining the secretary of state from accepting a referendum petition that had not yet been filed. *Id*. at 332. The Supreme Court noted that resolution of the issue of prematurity was "determined by our statute (section 6750, R.S. 1909)" which provided the two remedies referenced in the Secretary of State's quote from the case. In other words, the statute in effect at the time controlled the remedies available, and directed mandamus where the secretary of state refused to accept and file a legally sufficient petition, and an injunction

24

where the secretary of state accepted and filed a legally insufficient petition. Because the statute did not contemplate a remedy to prevent the filing of a petition, our Supreme Court reversed the trial court's judgment imposing an injunction. *Id*. at 342.

*Westhues* does not hold, therefore, that mandamus is the exclusive remedy available to compel the secretary of state to accept a filing. At best, *Westhues* addressed the remedies provided by a statute. That statute, section 6750, R.S. 1909, is no longer in force and effect, and has been replaced in substance by what is now section 116.200. As we have previously explained,[17] section 116.200 addresses any citizen's right to file an action to compel the secretary of state to reverse a decision to certify (or not) a submitted referendum (or initiative) petition for inclusion on the ballot. Section 116.200 applies only to the secretary of state's post-signature collection review and certification of a submitted referendum (or initiative) petition pursuant to sections 116.120 and 116.150. Section 116.200 does not apply to the secretary of state's pre-signature collection review of a sample sheet for sufficiency as to form. And even if it did, section 116.200 does not identify or limit the "remedy" which can be employed to compel the secretary of state to reverse a petition certification decision.

It is noteworthy, in fact, that our Supreme Court observed in *Westhues* that "[t]his statute [section 6750, R.S. 1909)] does not rob the courts of their power to use the equitable remedy of injunction, but it is a reasonable [statutory] limitation on the use of that remedy by the courts," referring to the fact that "[t]he purpose of fixing the point [by statute] at

---

[17]*See* footnote 14, *supra*.

which the courts can intervene by injunction is to give the state officer the right to first act, and should he act wrongfully, . . . the courts can then intervene by injunction, to the end that the very rights of the matter may be found." *Id.* at 333. That is exactly the scenario before us. Despite the Secretary of State's claim to the contrary, the ACLU is not seeking to compel the Secretary of State to accept its Sample Sheet for filing. It is instead seeking to compel the Secretary of State to reverse the decision to reject the Sample Sheet after it was filed, and to instead approve the Sample Sheet as required by section 116.332. The Secretary of State was given the right to first act, is alleged to have acted wrongfully, and the ACLU now seeks intervention by the courts by injunction as a part of the court's inherent equitable power "to the end that the very rights of the matter may be found." *Id.*

We reject, therefore, the Secretary of State's contention that he can only be compelled by mandamus, and not by injunctive relief, to approve the Sample Sheet. Our cases recognize that injunctive relief and mandamus are, in fact, akin to one another. As our Supreme Court noted in *State ex rel. Shartel v. Humphreys*, 93 S.W.2d 924, 926 (Mo. 1936), "'in those states where the same court is vested with both legal and equitable jurisdiction (Missouri is such) there is very little difference in its practical results between proceedings in mandamus and by mandatory injunction. . . .'" (quoting 7 McQuillin's Muncipal Corp. (2d Ed.) section 1975). "Mandatory injunction may be invoked to compel the undoing of something wrongfully done." *Id.* at 926-27 (citing 32 C.J. 23; *Walther v. Cape Girardeau*, 149 S.W. 36 (Mo. App. St.L. Dist. 1912); *Place v. Union Township*, 66 S.W.2d 584 (Mo. App. Spring. Dist. 1934)). "However, mandamus has been invoked for the same purpose." *Id.* at 927 (citing *State ex rel. Snow Steam Pump Works v. Homer*, 155

26

S.W. 405 (Mo. 1913)).  Similar to a mandatory injunction, "'[t]he purpose of the extraordinary writ of mandamus is to compel the performance of a ministerial duty that one charged with the duty has refused to perform.'"  *Manz v. Prairie Township Fire Protection Board*, 463 S.W.3d 831, 835 (Mo. App. W.D. 2015) (quoting *Furlong Companies, Inc. v. City of Kansas City*, 189 S.W.3d 157, 165-66 (Mo. banc 2006)).

Here, the ACLU's petition requested declaratory relief to first resolve the controversy regarding the Secretary of State's rights and obligations with respect to review of the Sample Sheet.  "In the context of a declaratory judgment action, a justiciable controversy exists where the plaintiff has a legally protect[ed] interest at stake, a substantial controversy exists between parties with genuinely adverse interests, and that controversy is ripe for judicial determination."  *Mercy Hosp. E. Cmtys. v. Missouri Health Facilities Review Comm.*, 362 S.W.3d 415, 417 (Mo. banc 2012) (internal quotations omitted).  The Secretary of State does not quarrel with the ACLU's right to seek declaratory relief on the issue of the parameters of the Secretary of State's statutory authority to review the Sample Sheet for sufficiency as to form.[18]  Having determined, as explained above, that the ACLU's claim for declaratory relief is meritorious, *Shartel* instructs that a permanent (mandatory) injunction, can be "invoked to compel the undoing of something wrongfully done."  93 S.W.2d at 926.

It is worth noting, in fact, that even had the ACLU requested a writ of mandamus in lieu of permanent injunctive relief, the issuance of a writ would have remained subject to

---

[18]Recall, as discussed earlier, that in limiting the reach of its discussion in *Frye*, our Supreme Court expressly noted that the plaintiff in that case ***had not sought a declaration*** that a State actor failed to act as required by statute, strongly suggesting that such relief is available.  440 S.W.3d at 408.

the trial court's discretion. "Mandamus is a discretionary writ, not a writ of right." *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 576 (Mo. banc 1994) (citation omitted). Moreover, "[m]andamus will lie only when there is a clear, unequivocal, and specific right." *Id*. (citation omitted). The Secretary of State contests whether section 116.332 imposes a clear, unequivocal and specific duty to approve the Sample Sheet, and goes so far as to argue that the obligation to do so is merely directory and not mandatory. Because the parameters of the Secretary of State's statutory authority to review a sample sheet for sufficiency as to form is a matter of first impression, it can hardly be said that the declaratory relief the ACLU sought on that subject addressed a "clearly established and presently existing" right--the essential requisites to mandamus. *Id*. (holding mandamus was "clearly inappropriate" where the "question of whether discovery is available in a contempt proceeding under section 536.095 ***has not previously been decided by a Missouri court***") (emphasis added) (citation omitted). We therefore question the availability of mandamus in this case of first impression, as before any remedy could be imposed, it was first necessary to adjudicate the extent of the secretary of state's authority to review a sample sheet for sufficiency as to form pursuant to section 116.332. *Id*. ("[T]he purpose of the writ [of mandamus] is to execute, not adjudicate.") (citation omitted). Regardless, whether mandamus would have been an available remedy in this case or not, mandamus is not the exclusive means by which the Secretary of State can be compelled to approve the Sample Sheet.

In light of the foregoing discussion, the first claim in the ACLU's point on appeal is granted. The second and third claims in the ACLU's point on appeal are not reached,[19] and are denied as moot. To be clear, this Opinion expresses no opinion about, did not need to decide, and does not decide, whether the emergency clause applicable to section 188.028 of HB 126 is self-actuating to defeat the constitutional power of referendum or is subject first to a judicial determination of its legitimacy; or whether the emergency clause applicable solely to section 188.028 of HB 126 defeats the power of referendum for the remaining sixteen provisions of HB 126 which are not subject to emergency clauses. We decide only that the Secretary of State had no authority pursuant to section 116.332 to consider constitutional compliance when reviewing the ACLU's Sample Sheet for sufficiency as to form, and was instead limited to reviewing the Sample Sheet for sufficiency as to form as defined by section 116.030.

## Conclusion and Entry of Judgment

The trial court's Judgment dismissing the ACLU's petition with prejudice is reversed. The Secretary of State was without authority under section 116.332 to reject the Sample Sheet on constitutional grounds. The Secretary of State identified no issues relating to the sufficiency as to form of the Sample Sheet, and concedes in these proceedings that the only basis for rejecting the Sample Sheet was on constitutional grounds. The Secretary of State was thus obligated by section 116.332 to approve the

---

[19]*See* discussion in footnote 8, *supra*.

Sample Sheet as sufficient as to form, as defined by section 116.030. The ACLU was entitled to enforce these declared rights by permanent mandatory injunctive relief.

Given the time exigencies in this case, in lieu of remanding this matter for the entry of a judgment consistent with this Opinion, we exercise our authority under Rule 84.14 to "give such judgment as the court ought to give" as to dispose finally of this case.[20]

A Declaratory Judgment is hereby entered in favor of the ACLU and against the Secretary of State and the Attorney General. Neither the Secretary of State nor the Attorney General had the statutory authority pursuant to section 116.332 to reject the Sample Sheet on constitutional grounds, and because no issue with the sufficiency as to form of the Sample Sheet has been identified, the Secretary of State was obligated by section 116.332 to approve the Sample Sheet within fifteen days of its submission.

Based on these declared rights, judgment is hereby entered in favor of the ACLU and against the Secretary of State for permanent mandatory injunctive relief compelling the Secretary of State to immediately withdraw his rejection of the Sample Sheet and to immediately send written notice to the ACLU approving the Sample Sheet as sufficient as to form pursuant to section 116.332.4. The Secretary of State is not compelled to re-refer a copy of the Sample Sheet to the Auditor for purposes of preparing a fiscal note and fiscal note summary as required by section 116.332.1, as the Auditor has already prepared a fiscal

---

[20]Rule 84.14 allows our court to "give such judgment as the court ought to give" and instructs that "[u]nless justice otherwise requires, the [appellate] court shall dispose finally of the case." Reliance on Rule 84.14 "is particularly appropriate for judgments where the salient facts are not in dispute, but the only dispute is the legal significance of the facts." *Malawey v. Malawey*, 137 S.W.3d 518, 525 (Mo. App. E.D. 2004) (citation omitted). "We can render the judgment that the trial court should have rendered when the record and evidence give us confidence in the reasonableness, fairness, and accuracy of the conclusion reached." *LaRocca v. LaRocca*, 135 S.W.3d 522, 526 (Mo. App. E.D. 2004).

note and fiscal note summary, and has already delivered same to the Attorney General. The Secretary of State is not compelled to re-refer a copy of the Sample Sheet to the Attorney General for review as required by section 116.332.1 and section 116.332.3, as review of the Sample Sheet by the Attorney General for sufficiency as to form would now be a superfluous and unnecessary act. Immediately following the Secretary of State's issuance of written notice to the ACLU approving the Sample Sheet as sufficient as to form, the Secretary of State and the Attorney General are compelled to proceed with performance of their obligations as contemplated by section 116.334.1.

All other claims for relief in the ACLU's petition are denied.[21]

It is so ordered.

_Cynthia L. Martin_

Cynthia L. Martin, Judge

All concur

---

[21]The ACLU also requested that we compel the Secretary of State to certify an official ballot title by July 18, 2019, a date the ACLU deems significant to its ability to gather the requisite number of signatures to be able to timely submit a referendum petition. Section 116.334.1 addresses the secretary of state's obligation to prepare and ultimately certify a ballot summary and ballot title. That obligation is expressly conditioned, however, on approval of a submitted sample sheet pursuant to section 116.332. Section 116.334.1. By our Opinion, and the judgment herein entered, we have now directed the Secretary of State to approve the Sample Sheet. That will trigger the Secretary of State's and the Attorney General's obligations to perform the statutory duties outlined in section 116.334.1. Though our judgment generally directs the Secretary of State and the Attorney General to perform their obligations pursuant to 116.334.1, we have no authority to modify the provisions of that statute, including the times therein permitted for performance. We therefore deny the ACLU's request to compel the Secretary of State to certify an official ballot title by July 18, 2019.

We recognize that if the Secretary of State and the Attorney General take all of the time permitted by section 116.334.1 to perform the obligations therein described, little time may remain for the ACLU to collect signatures on a referendum petition. That predicament underscores why it is beyond the Secretary of State's authority under section 116.332 to derail the referendum process by reviewing a sample sheet for anything other than its sufficiency as to form pursuant to section 116.030.

31